IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION


SHERRI L. DAVIS; et al.                                              PLAINTIFFS

VERSUS                          CIVIL ACTION NO. 2:06-CV-187-LES-CSC


                                                          JURY TRIAL DEMANDED

PACTIV CORPORATION; et al.                                          DEFENDANTS


AMENDED COMPLAINT FOR THE
CLAIMS OF PLAINTIFF KANDY CREECH


**JURISDICTION**

1.    This action makes claims for damages for violation of the laws

of the State of Alabama.  The Plaintiff specifically does not claim any

damages for violation of federal statutes or law.


**VENUE**

2.    Venue of this action is proper in Covington County, Alabama,

because many of the wrongful acts which caused the Plaintiff's injuries and

Page 1 of  26

damages occurred in Covington County, Alabama, and the Plaintiff was injured in Covington County, Alabama.

## PARTIES

3.    PACTIV Corporation does business by agent in the State of Alabama.

4.    Louisiana-Pacific Corporation does business by agent in the State of Alabama.

## BACKGROUND

5.    Plaintiff makes a claim for personal injuries caused by exposure to toxic chemicals and hazardous wastes which were released into the environment  from a wood treatment facility formerly owned and operated by the Defendants in Covington County, Alabama.

6.    The facility is located in the town of Lockhart, Alabama, and is adjacent to the town of Florala, Alabama.

7.     Plaintiff Kandy Creech was present at other homes, businesses, places of employment, churches and/or schools in the Florala/Lockhart area.

8.     Pactiv Corporation and its predecessors assumed ownership and began operation of the wood treatment facility prior to 1960.

9.     PACTIV engaged in the business of treating lumber and pine wood poles with creosote and pentaclorophenol and CCA.

10.     Energy for the PACTIV wood treatment operation was partly obtained by burning wood wastes and scrap bark in three wood waste boilers which were used to create steam and provide heat and energy for PACTIV's sawmill and wood treatment operation.

11.     The boilers used by Defendants were not licensed as hazardous or toxic waste incinerators.

12.     The boilers used by Defendants were not designed or intended to be used as hazardous or toxic waste incinerators.

13.     The boilers used by Defendants at the facility would not have safely disposed of any hazardous or toxic waste burned in them.

14.     The facility also operated a teepee burner which was used to burn waste or scrap wood.

15.    Pursuant to 42 U.S.C. § 241(4), the Secretary of Health and Human Services maintains a list of substances known to be carcinogens, or which may be reasonably anticipated to be carcinogens.

16.    Pursuant to 42 U.S.C. § 6921, the Administrator of the Environmental Protection Agency, in cooperation with the Agency for Toxic Substances and Disease Registry and the National Toxicology Program, identifies a list of those hazardous wastes which are carcinogens, mutagens, teratogens, or endanger human health.

17.    The United States Environmental Protection Agency, Office of Pesticides Program, also maintains a list of chemicals evaluated for carcinogenic properties.

18.    The Secretary of Health and Human Services, United States Environmental Protection Agency lists creosote as a probable human carcinogen.

19.    Creosote is a mixture of chemicals and is probably carcinogenic to humans.

20.    The creosote mixture used by the Defendants at their Florala/Lockhart facility contained chemicals which are known to cause cancer.

21.    The Secretary of Health and Human Services and the United States Environmental Protection Agency lists pentaclorophenol as a probable human carcinogen.

22.    Pentaclorophenol is probably carcinogenic to humans.

23.    The pentaclorophenol used by both Defendants for wood treatment at the subject wood treatment facility was also contaminated with dioxin/furans.

24.    Dioxin and/or dioxin/furans contaminates in pentaclorophenol used at the facility included tetrachlorodibenzo-p-dioxins, pentachlorodibenzo-p-dioxins, hexachlorodibenzo-p-dioxins, heptachlorodibenzo-p-dioxins, tetrachlorodibenzo-furans, pentochlorodibenzo-furans, hexachlorodibenzo-furans, heptachlorodibenzo-furans, octachlorodibenzo-furans and optachlorodibenzo-p-dioxins and mixtures of dioxin/furans classified on toxicity equivalent scales by the United States Environmental Protection Agency in accordance with law.

25.    The pentaclorophenol used by Defendants at the Florala/Lockhart facility contained chemicals which are known to cause cancer.

26.    The creosote used for wood treatment at the wood treatment facility by Defendants was contaminated with and contained polycyclic aromatic hydrocarbons (PAHs).

27.    The creosote or wood treatment chemicals used by Defendants at the wood treatment facility was further contaminated with and contained benzene.

28.    Benzene is listed by the Secretary of Health and Human Services and United States Environmental Protection Agency as a known human carcinogen.

29.    The wood treatment chemicals used by both Defendants at the subject wood treatment facility also were contaminated with or contained other chemicals which are generally scientifically recognized to be human carcinogens, to cause birth defects, or to be accelerants and promoters of cancer in humans.

30.    The Defendants also made use of cooling tower corrosion inhibitors which contained hexavalent chromium.

31.    The Secretary of Health and Human Services and United States Environmental Protection Agency list chromium (VI) as a known human carcinogen.

32.    Defendants further used CCA (Copper Chromate Arsenate) as a wood treatment chemical.

33.    The Secretary of Health and Human Services and the United States Environmental Protection Agency classify arsenic as a known human carcinogen.

34.    Arsenic causes cancer in humans.

35.    The wood treatment operation employed by Defendants created or generated waste water when water in wood products was replaced by treatment chemicals in a pressurized treatment cylinder or "retort."

36.    The waste water created or generated by Defendants was contaminated with toxic or hazardous chemicals from the treatment chemicals.

37.    The Defendants further operated or maintained water evaporation and containment areas, or lagoons.

38.    The Defendants engaged in the air disposal of toxic waste water by maintaining a spray field of spray nozzles which sprayed toxic waste water into the air over disposal lagoons.

39.    Both Defendants illegally burned toxic and hazardous wastes from their lagoons and waste disposal pits and deposited toxic ash on the facility property.

40.    Beginning November, 1983, Louisiana-Pacific Corporation (herein referred to as "L-P") began ownership and operation of the subject wood treatment facility.

41.    L-P continued operating the facility with the same local management in the same manner as PACTIV.

42.    In addition to the toxic waste that it created, L-P assumed responsibility to dispose of toxic or hazardous waste left at the facility by PACTIV. PACTIV further had and/or assumed a duty to remediate and remove toxic waste from the facility in addition to the duties of L-P.

43.    Based upon information and belief, Plaintiff alleges that PACTIV continued to maintain, by operation of law or contract, a responsibility to remediate and clean hazardous substances from the facility.

44.    During its term of operation, the Defendant PACTIV sprayed toxic waste into the air.

45.    During its term of operation, the Defendant PACTIV placed toxic wastes in its boiler and engaged in the burning of toxic waste.

46.    During the term of its operation, L-P sprayed toxic waste water into the air.

47.    During the term of its operation L-P placed toxic wastes in its boiler and engaged in the burning of toxic waste.

48.    The Defendant PACTIV further burned toxic sludge from their toxic waste containment lagoon by putting it in the boilers.

49.    The Defendant L-P further burned toxic sludge from their toxic waste containment lagoon by putting it in the boilers.

50.     Both Defendants engaged in the burning of hazardous wastes which were contaminated with known human carcinogens or with probable human carcinogens and toxic waste.

51.     The Defendants also used sawdust to filter and contain hazardous wastes.

52.     The sawdust used by Defendants was contaminated with creosote, pentachlorophenol, arsenic and associated chemicals.

53.     The sawdust used for hazardous waste containment by Defendants was burned in the operation boilers, along with the hazardous waste contained in it.

54.     Both Defendants engaged in the nocturnal and weekend discharge and/or burning of toxic and hazardous wastes.

55.     Weekend or nocturnal burning was less likely to be detected by regulators or noticed by the community.

56.     Both Defendants sprayed toxic waste into the air which was contaminated with known human carcinogens or probable human carcinogens.

57.     Certain chemicals of concern were utilized, discharged, disposed, emitted, or otherwise released into the local environment by Defendants at the wood preserving facility.

58.    The groups of chemicals utilized, discharged, disposed, or otherwise released by Defendants included, but are not limited to, coal-tar creosote, pentachlorophenol, cooling tower corrosion inhibitors, metals, arsenic, chromium, furans and dioxins, as well as particulates containing metallic ions and poly-cyclic aromatic hydrocarbons (PAHs).

59.    The physical forms of these chemicals to which Plaintiff was exposed include off-site migration of wood preservative liquids and waste liquids resulting from wood treatment processes at the facility, off-site migration of particulates, off-site migrations of vapors and gases of chemicals of concern at elevated temperatures, off-site migration of products and by-products of combustion resulting from on-site fires and burning operations and the off-site migration of aerosol droplets containing dissolved concentration of the above referenced chemicals of concern from a variety of on-site process operations.

60.    The Defendant PACTIV released or caused to be released toxic or hazardous chemicals into the adjacent streams or ditches and thus discharged hazardous toxic chemicals.

61.    The Defendant L-P caused or allowed the discharge of hazardous chemicals and toxic waste by discharge into adjacent streams or ditches.

62.     Groundwater at the facility has been contaminated by toxic and hazardous wastes.

63.     Groundwater at the facility which is contaminated by toxic and hazardous wastes has migrated off-site.

64.     The Defendants released toxic chemicals into the local atmosphere as a result of wood treatment operations and by drips, spills, leaks, cooling tower discharges and accidents in their waste disposal practices.

65.     The Defendants engaged in the discharge of toxic waste fluids.

66.     The Defendants caused the discharge of toxic chemical vapors, particulates and aerosols into the air.

67.     The day to day operations of Defendants' wood treatment process resulted in the discharge of toxic waste, hazardous waste and known or probable human carcinogens.

68.     Defendants used toxic wastes to make roadways and scattered it about the facility roadways.

69.     Toxic chemicals spread over the facility contributed to a cloud of toxic dust or vapors created by the operation.

70.     PACTIV did not adequately train their employees, management or personnel and did not inform their management, employees or personnel of the

dangers associated with the chemicals used in their wood treatment facility or operation.

71.    L-P did not adequately train their employees, management or personnel and did not inform their management, employees or personnel of the dangers associated with the chemicals used in their wood treatment facility or operation.

72.    Defendant PACTIV was aware of the hazardous nature of pentachlorophenol, creosote, CCA and the chemical constituents contained therein.

73.    Defendant L-P was aware of the hazardous nature of pentachlorophenol, creosote, CCA and the chemical constituents contained therein.

74.    Both PACTIV and L-P were aware of the hazardous nature of the air emissions as well as the hazardous nature of the waste that was being disposed into ditches and creeks.

75.    At all times pertinent hereto, Defendants knew or should have known that the treatment process at the subject wood treatment facility utilized materials which had been identified as hazardous or toxic chemicals and that they presented a danger to human health.

76.    Defendants were aware of the health risks to nearby residents associated with operation of their wood treatment plant and the toxic chemicals released therefrom.

77.    In spite of Defendants' knowledge that much of the surrounding neighborhood would be affected by release of toxic chemicals, no information was ever disseminated to the public.

78.    The Defendants made no effort to warn surrounding neighborhoods and the public of the nature of the disease or cancer causing emissions from their facility.

79.    The toxic chemicals emitted by Defendants were persistent when deposited in Kandy Creech's home and environment so that Kandy Creech continued to be exposed to them even after the time of emission.

80.    PACTIV has a history of non-compliance with Alabama Department of Environmental Management (ADEM) regulations at the Lockhart wood treatment facility.

81.    PACTIV has a history of non-compliance with United States Environmental Protection Agency regulations at the Lockhart wood treatment facility.

82.     L-P has a history of non-compliance with Alabama Department of Environmental Management (ADEM) regulations at the Lockhart wood treatment facility.

83.     L-P has a history of non-compliance with United States Environmental Protection Agency regulations at the Lockhart wood treatment facility.

84.     At all times pertinent hereto, the Defendants PACTIV and L-P by and though their agents, servants, employees, or officers operated the wood treatment plant in such a manner as to cause the release of arsenic, pentachlorophenol, dioxin/furans, PAH's, creosote, and their constituents which contained hazardous and toxic chemicals.

85.     The fact that Kandy Creech was present at homes in various locations in the Florala/Lockhart area and that she attended school near the facility caused her to be exposed to toxic and/or hazardous chemicals or known or probable carcinogens released or produced at Defendants' wood treatment facility.

86.     The Plaintiff alleges that the exposure to the toxic or hazardous waste originating from the Defendants' wood treatment facility proximately caused Plaintiff Kandy Creech to suffer injuries and damages.

87.     Plaintiff Kandy Creech did not know and reasonably had no knowledge or way of ascertaining that her disease was caused by toxic chemicals originating

from Defendants' wood treatment facility until a time period within two of the years of the date of the filing of this complaint.

88.    Plaintiff further alleges that the Defendants have entered into a tolling agreement and have agreed not to assert the statute of limitations for any time that accrued during the time defined by the parties' tolling agreement.

89.    At all times pertinent to this Complaint, Defendants created, stored and disposed of toxic and hazardous waste and chemicals which were regulated by both federal and state law.

90.    Defendants were required by law to maintain written records of their disposal of toxic and hazardous chemicals.

91.    Defendants were required by law to maintain written records of their airborne emissions of toxic and hazardous chemicals.

92.    The Plaintiff avers that the Defendants had a duty to make and maintain written records of toxic and hazardous chemical emissions.

93.    Plaintiff avers that the Defendants had a duty under the law to keep records of all toxic and hazardous chemicals which they stored on their premises.

94.    Plaintiff avers that Defendants were required by law to keep written records of any hazardous waste which they disposed of either on-site or off-site.

95.    Defendant L-P had actual knowledge of the pending or potential litigation which would be filed against them by Plaintiff.

96.    Upon information and belief, Plaintiff avers that with knowledge of claims that would become litigation, Defendants  destroyed or disposed of material evidence and documents.

97.    Plaintiff is  entitled to benefit of the substantive law of the State of Alabama, including an inference of Defendants' guilt, culpability or awareness of their liability because of spoliation of evidence.

## COUNT ONE

## NEGLIGENCE

98.    Defendants had a duty to Plaintiff Kandy Creech since the commencement of their operation and continuing to the date of this lawsuit.

99.    Plaintiff was a foreseeable victim of the dissemination of toxic fumes and toxic waste into the air, soil and water which evaded the community in which Plaintiff lived for years.

100.   The Defendants, their officers, directors, agents and employees knew or should have known with the exercise of reasonable care that their

operations emitted toxic and noxious substances and particulates, or with

the exercise of reasonable care should have known that the emissions would

injure the health of the persons or public who lived near or attended school

the Defendants' facility.

101.  At all times pertinent to this lawsuit, the Defendants failed to

use due care to avoid injuring the Plaintiff.

102.  The Defendants negligent acts or omissions proximately caused

Plaintiff Kandy Creech to suffer physical and emotional injuries and

damages, including pain and suffering, loss of earning capacity, medical

expenses, future medical expenses and severe and disabling life threatening

injuries which have caused the Plaintiff to suffer loss of enjoyment of her

life and which will probably result in her death.

## COUNT TWO

## RECKLESSNESS

103.  The failure of Defendants, their officers, agents and employees

to prevent the contamination of air or soil or water in the Florala/Lockhart

area was  wanton and exhibited a reckless disregard for the lives and health of the Plaintiff Kandy Creech and persons in surrounding neighborhoods.

104.  As a direct and proximate result of gross negligence and wanton acts of the Defendants Plaintiff suffered physical and emotional injuries and damages, including pain and suffering, loss of earning capacity, medical expenses, future medical expenses and severe and disabling life threatening injuries which have caused the Plaintiff to suffer loss of enjoyment of  life and will probably result in her death.

105.  The Defendants' gross negligence, and pattern and practice of reckless and wanton acts and their reckless disregard for the safety of the Plaintiff entitles the Plaintiff to punitive damages in order to punish Defendants, to deter Defendants from such conduct in the future and to deter others from engaging in such irresponsible activity.

## COUNT THREE

## NEGLIGENCE PER SE

106.  Defendants violated the standards provided by Code of Alabama 22-27-3(e) by burning hazardous wastes without using an approved incinerator meeting temperature requirements and air pollution controls required by law.

107.   Defendants also violated the provisions of the Alabama Hazardous Wastes Management Act (Code of Alabama 22-30-1 thru 24) by disposing of hazardous waste without a permit or in a manner that their permit did not allow.

108.   Defendants violated the provisions of the Alabama Air Pollution Control Act of 1971 (Code of Alabama 22-28-1 thru 23) by violation of the Rules and Regulations of the Alabama Department of Environmental Management and by disconnecting air pollution control devices installed on company wood fired boilers.

109.   The Defendants violated the Alabama Environmental Management Act (Code of Alabama 22-22A-1 thru 6), the Alabama Solid Waste Disposal Act (Code of Alabama 22-27-1 thru 49) and the Alabama Hazardous Waste Management Act (Code of Alabama 22-30-1 thru 24) by burning hazardous waste without a permit, creating a hazardous substance ash dump, by disconnection of temperature and/or pollution control devices and by violating the rules and regulations of the State of Alabama, including the Alabama Department of Environmental Management Administration Code, by:

   a.   violation of Regulation 335-3-3-.05(19)(c) when Defendants failed to meet continuous compliance requirements by burning a different type

of waste other than the type waste used to establish boiler operating limits, or

b.      a violation of regulation 335-3-14-.01(1)(b) by operating equipment which issued air contaminates without a permit or in violation of permit, or

c.      a violation of 335-3-4-.02(1)and(2) by allowing hazardous materials which Defendants handled, stored or used to become airborne or migrate off site, or

d.      a violation of 335-14-7-.08 by burning hazardous waste in a wood fired boiler or by operating a boiler without an automatic feed cut-off functioning, or

e.      a violation of 335-14-X by failing to properly train personnel who stored, used or disposed of hazardous wastes, or

f.      a violation of 335-14-5 by disposing of hazardous wastes without permit or in violation of permit requirements, or

g.      a violation of 335-14-7-.08 subpart H for use of an industrial boiler to dispose of hazardous wastes in a manner not allowed or exempted, or

h.    violation of federal rules and regulations adopted by the State of

Alabama.

110.    Defendants violated the requirements and standards of the laws of the

United States, including the Resource Conservation and Recovery Act, the Clean

Air Act, the Clean Water Act, the Solid Waste Disposal Act and the Comprehensive

Environmental Response Compensation and Liability Act.

111.    In particular, the Defendants violated the standards, rules and

regulations of the United States Environmental Protection Agency which were

promulgated pursuant to the above described public laws and which were

incorporated into the laws and regulations of the State of Alabama.

112.    The Defendants violated the following regulations:

a.    40 C.F.R. 266.102 by operating an individual boiler in a manner that

was not in accordance with permit requirements, or

b.    40 C.F.R. 264.344 by operating a hazardous waste incinerator without

permit and which would not have complied with permit requirements,

or

c.    40 C.F.R. 61.05 by operating a source of hazardous pollutants without

permit and in violation of any permit requirements.

113.    Plaintiff avers that Defendants' violations of the laws and regulations of the State of Alabama, the regulations of the State of Alabama which incorporate federal standards, and the regulations of the United States Environmental Protection Agency constitute a violation of a duty intended to prevent harm to persons similar to Kandy Creech and that the Defendants' violations are evidence of a breach of duty.

114.   As a proximate consequence of the aforestated negligence per se of Defendants and their agents, employees and representatives, Plaintiff Kandy Creech suffered physical and emotional injuries and damages, including pain and suffering, loss of earning capacity, medical expenses, future medical expenses and severe and disabling life threatening injuries which have caused the Plaintiff to suffer loss of enjoyment of their life and will probably result in her death.

## COUNT FOUR

## INTENTIONAL TORT

115.   Defendants knowingly and intentionally failed to investigate fully and prevent sources of their off-site air contamination and failed to make

any efforts to remediate the same so that injury to the Plaintiff Kandy

Creech and other persons was certain or substantially certain.

116.  The Defendants' acts manifest an extreme indifference to human

life and created a risk of death or severe disease in persons exposed to the

hazardous and toxic wastes of Defendants.

117.  Defendants intentionally released toxic and hazardous chemicals

into the air in violation of law.

118.  Plaintiff was a foreseeable victim of Defendants' wrongful acts.

119.  As a direct and proximate consequence of the knowing and

intentional acts of Defendants and their agents, servants, employees, or

representatives, Plaintiff Kandy Creech suffered physical and emotional

injuries and damages, including pain and suffering, loss of earning capacity,

medical expenses, future medical expenses and severe and disabling life

threatening injuries which have caused the Plaintiff Kandy Creech to suffer

loss of enjoyment of her life and will probably result in her death.

120.  The Defendants' knowing and intentional acts in violation of the

laws of the State of Alabama entitle the Plaintiff Kandy Creech to receive

punitive damages in order to punish Defendants, to deter the Defendants

from such conduct in the future and deter others from engaging in such irresponsible activity.

## NEGLIGENT FAILURE TO TRAIN AND SUPERVISE

121.   Defendants negligently failed to properly train their employees concerning the hazards of the toxic substances which were used, stored or disposed of at the facility.

122.   Defendants negligently failed to properly train their employees on methods of safe handling of the toxic substances used, stored or disposed of at the facility.

123.   As a proximate consequence of the Defendants' aforestated negligence, Kandy Creech was caused to suffer injuries and damages.

124.   Defendants did not use proper pollution control devices and disposed of toxic chemicals by burning in order to increase their profits.

125.   The Defendants' knowing and intentional acts in violation of the laws of the State of Alabama entitle the Plaintiff to receive punitive damages in order to punish Defendants, to deter the Defendants from such

conduct in the future and deter others from engaging in such irresponsible activity.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Kandy M. Creech demands judgment against Defendants for both compensatory and punitive damages to be determined by the trier of fact and costs.

 /s/ W. Eason Mitchell
W. EASON MITCHELL (MIT020)
The Colom Law Firm, LLC
Post Office Box 866
Columbus, MS 39703-0866
Telephone: 662-327-0903
Facsimile: 662-329-4832
emitchell@colom.com

## CERTIFICATE OF SERVICE

I, W. Eason Mitchell, hereby certify that on October 10, 2007, I electronically filed the foregoing *Amended Complaint for the Claims of Plaintiff Kandy Creech* with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

Douglas Sheppard Arnold
Dennis R. Bailey
Joshua L. Becker
John C. Berghoff , Jr
Meaghan G Boyd
Richard Elder Crum
Fred R. DeLeon , Jr
John Aaron Earnhardt
Jaimy L Hamburg
R. Austin Huffaker , Jr
Orlyn O. Lockard , III
Akila S. McConnell
Edwin Bryan Nichols
Laura Ellison Proctor
Sean A. Simmons
Matthew C. Sostrin
Bernard Taylor
Mark R. Ter Molen
H. Thomas Wells, Jr
Roberta M Wertman

This 10th day of October, 2007.


 /s/ W. Eason Mitchell
W. Eason Mitchell

85309.wpd

Page 26 of  26